# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KIM EMANUEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 2270 |
| ) | |
| ROLLING IN THE DOUGH, INC., and ) | |
| KENNETH R. LINDEMAN, ) | The Honorable Sharon Johnson Coleman |
| ) | |
| Defendants. ) | |
| ) | |
| ************************************ ) | |
| ) | |
| ROLLING IN THE DOUGH, INC., and ) | |
| KENNETH R. LINDEMAN, ) | |
| ) | |
| Third-Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DAVID P. SHAFER, ) | |
| ) | |
| Third-Party Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on cross-motions for summary judgment. Defendants, Rolling in the Dough, Inc. and Kenneth R. Lindeman, filed a motion for summary judgment seeking judgment as a matter of law in their favor finding that plaintiff Kim Emanuel is not an employee under the Fair Labor Standards Act ("FLSA") and that such a finding defeats Emanuel's FLSA claim for wages and her claims under the Illinois Minimum Wage Law and quantum meruit. Emanuel also filed for summary judgment requesting that this Court find that she is an employee within the meaning of FLSA and Illinois Minimum Wage Law, and that defendant Lindeman had constructive knowledge of her work. For the reasons stated below, this Court finds in favor of defendants and against plaintiff.

**Background**

Unless otherwise noted, the following relevant facts are undisputed. Defendant Rolling in the Dough, Inc. is a corporation that operates several Domino's Pizza franchises in the Chicago area. Defendant Kenneth R. Lindeman is the owner of Rolling in the Dough. Plaintiff Kim Emanuel's boyfriend and domestic partner David Shafer managed the Domino's Pizza restaurant located in Elmhurst, Illinois ("the Elmhurst store") operated by defendants.

At some point in 2007, Emanuel told Shafer that she wanted to work at the Elmhurst store. Emanuel wanted to help Shafer with his effort to become a Domino's Pizza franchise owner.[1] Shafer informed Emanuel that he would have to speak to Lindeman about Emanuel working at the Elmhurst store. Thereafter, Shafer told Emanuel that Lindeman "believed your talents can be better utilized somewhere else." (Defendants' Local Rule 56.1 Statement of Material Facts, Dkt. 94, at ¶10). Sometime later, Shafer communicated to Emanuel that she could begin working at the Elmhurst store. Emanuel's deposition testimony as cited by plaintiff in her Response to Defendants' LR 56.1 Statement of Facts, indicates that she *assumed* Shafer spoke to Lindeman. (Dkt. 105, at ¶ 12). Her testimony is as follows: "Q. So Mr. Shafer communicated to you that Mr. Lindeman had said to him that you can come in and perform services at the Elmhurst store? A. I would say yes. Q. Why would you say yes? A. Because he didn't tell me not to come in; and he saw me at the store, the president saw me in the store, area leaders saw me in the store." (Dkt. 94-1 at 65:18-66:1). Emanuel further testified, Q. "I'm asking about whether Mr. Shafer had a conversation with you before you started working at the Elmhurst store where he said that he had

---

[1] Emanuel admitted in her Response to Defendants' Rule 56.1 Statement of Facts that she wanted to work at the Elmhurst store to help. (Dkt. 105 at ¶ 9). Emanuel also provided an affidavit that gave other additional reasons for wanting to work at the Elmhurst store, including the conclusory assertion that she "expected to get paid compensation for [her] labors." (*Id*. Plaintiff's Affidavit ¶3). "Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) (citing *Haywood v. North Am. Van Lines, Inc*., 121 F.3d 1066, 1071 (7th Cir. 1997)).

spoken to Mr. Lindeman and that Mr. Lindeman said that it was okay for you to come work there. A. I'm sure we did have a conversation. Otherwise Ken Lindeman probably would have told me get the hell out of my [sic] store." (Dkt. 94-1 at 67:2-9). Emanuel alleges that she worked at the Elmhurst store from late 2007 until approximately December 2009. In an email exchange from April 2008 between Lindeman and Shafer, Lindeman stated that it would violate the company's nepotism policy for Emanuel to be a paid store employee. (Dkt. 94 at ¶15). It was Shafer's understanding from this communication that defendants had made a determination that they would not permit Emanuel to be a paid store employee. (Dkt. 94 at ¶16; Dkt. 94-3 at 82:2-12).

Defendants never promised to pay Emanuel for working in the store. Defendants never told Emanuel directly or indirectly that they would pay her for working at the Elmhurst store during the entire time she claims to have worked. Emanuel never had an agreement with Lindeman that defendants would pay her for any work performed at the Elmhurst store. Shafer never promised to pay Emanuel for any services she performed at the Elmhurst store. An IRS Form I-9 was never completed for Emanuel. No IRS Form W-4 was ever completed for Emanuel. No "new hire" paperwork was ever completed for Emanuel. All employees of Rolling in the Dough were required to provide banking information to receive direct deposit for any wage payments. Defendants assert that no financial information for Emanuel was ever provided to defendants. Plaintiff denies this assertion because Shafer and Emanuel had a joint checking account and therefore defendants had Emanuel's financial information. (Dkt. 105 at ¶28).

Emanuel believed her role at the Elmhurst store was sharing the general store management duties with Shafer and doing the same job as Shafer. Emanuel and Shafer's plan for Emanuel was that she would operate the Elmhurst store while Shafer went out and delivered pizzas. Shafer was

the general manager of the Elmhurst store and no other stores operated by defendants had more than one general manager.

Shafer stopped working for defendants around November or December 2009. Shafer would not have left defendants employ if he was paid the profits that he believed were owed to him under his agreement with Lindeman. Emanuel working at the Elmhurst store was not part of the agreement between Shafer and Lindeman. Shafer testified as follows: "Q. But just so we're clear, Kim's working at the store without being paid, that wasn't part of the deal for you purchasing the store and becoming a franchisee. You're not saying that, are you? A. Of course not. She worked at the store because it made more sense for our family because she was going to school in Elmhurst. And she was working on the other side of the city. So in terms of making our lives better in terms of timing and effort and timewise, it made more sense for her to be an employee at the store." (Dkt. 94-3 at 159:20-160:5). Shafer believed that Emanuel would have continued working at the Elmhurst store without pay, if Shafer had not quit.

**Legal Standard**

A party is entitled to summary judgment if all of the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). On cross-motions, summary judgment is appropriate only when evidence as a whole shows there is

no genuine dispute as to any material fact, *Davis v. Time Warner Cable of Southeastern Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011), regardless to which motion the evidence is attached. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

**Discussion**

Resolution of the issues before the Court requires determination of whether plaintiff Emanuel was an employee under the FLSA. Defendants argue that Emanuel was not an employee under the FLSA because it is undisputed that defendant Lindeman expressly stated on more than one occasion that he would not pay her and that her talents would be better used elsewhere. In effect, defendants' position is that they never hired Emanuel as an employee and therefore were never under any obligation to compensate her. Emanuel argues that she was an employee because Lindeman did not prevent her from working in the Elmhurst store even though he was aware that she was sometimes present at the store and her name appeared on the timesheets sent to Lindeman.

The determination of an individual's employment status is a legal rather than a factual determination. *Karr v. Strong,* 787 F.2d 1205, 1206 (7th Cir. 1986). "Those seeking compensation under the [Fair Labor Standards] Act bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act." *Benshoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999); *see also Kellar v. Summit Seating Inc.,* 664 F.3d 169, 173 (7th Cir. 2011) (The plaintiff bears the burden of proving she performed work under the Act for which she was not compensated. Then the burden shifts to the defendant to prove an exemption applies.). Under the FLSA, "employ [means] to suffer or permit to work." 29 U.S.C. §203(g). "The term 'employee' means any individual employed by an employer." *Id.* at §203(e)(1). The United States Supreme Court has noted that the statutory definition of "employee" provides little guidance to courts and is "completely circular and explains

5

nothing." *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). [2]

Courts look to the totality of the circumstances when determining whether an individual is an "employee" under the FLSA and examine the "economic reality" of the working relationship. *See, e.g., Vanskike v. Peters,* 974 F.2d 806, 808 (7th Cir. 1992). Courts have considered a variety of factors when examining the "economic reality" of a purported employment relationship, though none are dispositive or controlling. *Secretary of Lab. v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987). Six commonly applied factors are: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business. *Id.* at 1534-35.

Here, plaintiff Emanuel advances an absurd position. Emanuel argues that defendant Lindeman's repeated statement that he would not pay her to work at the Elmhurst store was not a refusal to hire her as an employee, but an offer for her to work for free. Since Emanuel claims to have worked at the Elmhurst store without compensation and without Lindeman forcibly ejecting her from the store or otherwise preventing her from working, it is her position that an employment relationship impliedly exists.

While application of the FLSA is intended to be broad, it is not unlimited. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728-29 (1947). The definition of "employ" is not so broad as to include those individuals "who, without any express or implied compensation agreement, might

---
[2] In *Darden,* the Supreme Court was referring to the ERISA definition of "employee", which is identical to the FLSA definition of employee.

work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). It is undisputed that Lindeman informed Shafer that Emanuel's talents would be better used elsewhere and that the Domino's nepotism policy prevented Lindeman from hiring Emanuel to work at the Elmhurst store. It is further undisputed that Emanuel never completed any new hire documents, such as IRS forms and direct deposit information, and that Lindeman never expressly told Emanuel that he would hire her to co-manage the Elmhurst store. Indeed, Lindeman had already hired someone, David Shafer, to manage the Elmhurst store and none of the other franchises had more than one manager. It defies common sense that Lindeman would pay two people to do the same job at the same time. As a matter of economic reality, if Emanuel and Shafer were doing the same job and sharing duties it stands to reason that they would also share the salary of a general manager. In essence, that is what Shafer and Emanuel did since the testimony in the record indicates that Shafer paid the couple's living expenses. Moreover, Emanuel testified that one of the reasons she was working at the Elmhurst store was to support Shafer and help him realize his dream of owning a franchise. The situation at hand bears none of the indicia of a traditional bargained-for exchange of labor for consideration. *See Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992).

Here, the record shows unquestionably that the parties had no express compensation agreement. Nor could there be any implied agreement between Lindeman and Emanuel in the face of his unequivocal refusal to hire her as an employee. Rather, it appears that Emanuel and Shafer unilaterally decided that Emanuel would work at the Elmhurst store, which does not amount to an employment relationship between defendants and Emanuel for purposes of the FLSA. "The words 'suffer or permit to work' must be understood with common sense." *Walling v. Jacksonville Terminal Co.,* 148 F.2d 768, 770 (5th Cir. 1945).

Emanuel relies on *Okoro v. Pyramid 4 Aegis*, No. 11-C-267, 2012 WL 1410025 (E.D. Wis. April 23, 2012), to support her position. In *Okoro*, the court considered whether the plaintiff was an employee or a volunteer. *Id.* at *6. There, the plaintiff Okoro claimed that she began working for the defendant Jerome Battles the sole owner of the corporate defendant Aegis, a nursing home venture, on June 7, 2009. Battles asserted that Okoro never asked to be paid and she knew that there was no money to pay her. *Id.* at *1. Battles admitted that Okoro may have checked on caregivers, made out work schedules, may have had employee meetings once or twice on her own volition, both Battles and Okoro confirmed work hours, Okoro submitted the hours to Paychex for the employees to receive their paychecks, and disciplined employees on one or two occasions. *Id.* at *3. It was undisputed that Okoro was not paid for any of the work she did for Aegis, but Battles asserted that she never asked to be paid, never submitted time sheets to Battles or Paychex, and was told that she would not be compensated while Aegis was operating in the red. *Id.* at *4. The court granted summary judgment in favor of the plaintiff, though it did not preclude the possibility that an individual could volunteer for a for-profit venture. The court found that, although Okoro and the defendant had a personal relationship and some of the time spent at Aegis was socializing, the record indicated that Okoro was working at Aegis and agreed to defer her compensation until the facility garnered clients. In fact, Battles stated that he intended to pay Okoro for her work if the business made money and she qualified as an administrator. *Id.* at *9.

At first blush *Okoro* seems similar to the case at bar, but there is a crucial difference. In *Okoro*, the defendant admitted that the plaintiff performed much of the work she claimed and, more importantly, both parties contemplated compensation for the plaintiff even though it would be deferred. Here, the defendant Lindeman refused to hire Emanuel as an employee stating that he would not pay her, that her working at the Elmhurst store would violate the nepotism policy, and

that her talents would be better used elsewhere. The situation here might be analogous to *Okoro* if Emanuel were seeking compensation from Shafer. The record shows that Shafer permitted Emanuel to work in the Elmhurst store to assist him with his duties and made overtures to her that he would obtain payment for her from Lindeman. In effect, Shafer, like Battles, allowed plaintiff to work.

The case at bar is more akin to the situations in *Steelman v. Hirsch*, 473 F.3d 124 (4th Cir. 2007), and *Beldin v. Travis County*, No. 02-572, (W.D.Tex. Apr. 18, 2003) *aff'd,* 85 Fed. Appx. 373 (5th Cir. 2003). In *Beldin v. Travis County,* the court granted summary judgment in favor of the defendant finding that the plaintiff was not an employee under the FLSA. *Beldin*, No. 02-572, Dkt. 22. In *Beldin,* the plaintiff claimed to have worked hundreds of hours for the defendant without compensation when she assisted her visually impaired mother who was employed by the defendant. The plaintiff feared her mother would lose her job without assistance. *Id.* at 4. The plaintiff maintained that she worked with the defendant's full knowledge and at the direction of the Travis County supervisor. In *Beldin*, as here, the plaintiff had no express agreement with the defendant that she would perform work for wages. The record in *Beldin* was also devoid of any record of her applying for a job, being hired for a job, receiving payment of wages, or even requesting payment. *Id.*

*Steelman v. Hirsch*, involved domestic partners that worked side by side in a dog-grooming business. 473 F.3d 124, 125 (4th Cir. 2007). They supported themselves with the proceeds from the business, but when the romantic relationship ended so did the working relationship. There, the district court granted summary judgment in favor of the defendant finding that the plaintiff fell outside the FLSA because she was no an employee but considered herself a partner in the business. *Id.* In *Steelman*, the evidence in the record showed that the plaintiff and her domestic partner saw their work together as a way to improve the economic future that they intended to share in

9

perpetuity, not as a bargained-for exchange of assets for labor. *Id.* at 130. The Fourth Circuit affirmed the judgment in favor of the defendant, but found that regardless of her ownership status, the relationship that the plaintiff described does not make her an employee under the FLSA. *Id.* at 132.

The situation at bar is far more analogous to the cases just described, in that Emanuel worked to assist her life partner Shafer with his duties to garner more income for their household and help Shafer secure the Elmhurst store as his own Domino's franchise. There is testimony in the record from Shafer that he believed Emanuel would have continued to work without any compensation. The evidence in the record shows that Lindeman stated that Emanuel would not be paid for any work she performed, not because he was offering her a job without compensation, but because he was not offering her a job at all. Lindeman's stated reason was the Domino's nepotism policy. If Emanuel was anybody's employee, it was Shafer's, not Lindeman's employee. "[A] person who performs services in the face of a regulation or stated policy that specifies that such services will be unpaid, yet who nevertheless persists in 'expecting' to receive compensation, should not be permitted to satisfy the definition of 'employee' simply by unreasonably insisting that he has a subjective expectation of receiving wages." *Todaro v. Township of Union,* 40 F.Supp.2d 226, 230-231 (D.N.J. 1999). The economic reality here is that Lindeman hired David Shafer to run the Elmhurst store and Shafer supported Emanuel and their children. The fact that Emanuel chose to assist Shafer with his duties after being informed that she would not be paid and that her efforts would be of better use elsewhere does not mean she is economically dependent on the defendants. Accordingly, this Court finds that Emanuel was not defendants' "employee" within the meaning of the FLSA and defendants are entitled to judgment as a matter of law.

Because this Court finds that Emanuel was not an "employee" entitled to compensation

under the FLSA, this Court also finds that Emanuel is not entitled to compensation under the Illinois Minimum Wage Law, 820 ILCS 105/4(a). *See Morgan v. SpeakEasy LLC*, 625 F.Supp.2d 632, 650 (N.D.Ill. 2007)(holding that the same analysis applies to both statutes). Emanuel's claim for quantum meruit seeking recovery for the services she allegedly rendered at the Elmhurst store also must fail. Based on the Court's analysis above, Emanuel's subjective expectation of compensation was utterly unreasonable in the face of explicit statements that she could not and would not be compensated for any work she chose to perform at the Elmhurst store. "A plaintiff cannot recover under quantum meruit if he has no expectation that the defendant would be the one to pay for the services." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (citing *Paradise v. Augustana Hosp. & Health Care Ctr.*, 222 Ill. App. 3d 672, 584 N.E.2d 326, 329, 165 Ill. Dec. 147 (Ill. App. Ct. 1991)). Accordingly, this Court finds that defendants are entitled to summary judgment on plaintiff's claim under the Illinois Minimum Wage Law and quantum meruit.

Based on the foregoing, this Court grants defendants Kenneth Lindeman and Rolling in the Dough's Motion for Summary Judgment and denies plaintiff Kim Emanuel's Motion for Summary Judgment.

IT IS SO ORDERED.

Date: November 21, 2012.

Entered:_____
Sharon Johnson Coleman